IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                                                     Civ. No. 1:14-cr-00406-AA

    v.                                                                          **OPINION & ORDER**

CARL GENE DUNLAP,

               Defendant.

_____

AIKEN, District Judge.

    This matter comes before the court for determination of whether Defendant Carl Gene Dunlap should be sentenced subject to the mandatory minimum sentence required by the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

## LEGAL STANDARD

### I.    ACCA

    18 U.S.C. § 922(g) prohibits any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess or receive "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). If a person violates 18 U.S.C. § 922(g) and has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years[.]" 18 U.S.C. § 924(e)(1).

    A "violent felony" is defined as:

[A]ny crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force

against the person of another; or (ii) is burglary, arson, or extortion, [or] involves the use of explosives . . . .[1]

18 U.S.C. § 924(e)(2)(B).

## II.    U.S.S.G. § 2K2.1

Federal firearms defendants "are subject to an enhanced Sentencing Guidelines range when they commit a firearm offense after sustaining one or more felony convictions of a crime of violence." *United States v. Park*, 649 F.3d 1175, 1177 (9th Cir. 2011) (internal quotation marks and citations omitted).

United States Sentencing Guidelines § 2K2.1 provides, in relevant part, that if a defendant was a prohibited person when he or she committed the instant offense and had no prior convictions for crimes of violence, his or her base offense level is 14. U.S.S.G. § 2K2.1(a)(6). If the defendant has a single prior felony conviction for a crime of violence, then the base offense level is 20. U.S.S.G. § 2K2.1(a)(4)(A). If a defendant has at least two prior felony convictions for crimes of violence, the base offense level is 24. U.S.S.G. § 2K2.1(a)(2).

For the purposes of the Guidelines, a "crime of violence" is

[A]ny offense under federal or state law punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another.

U.S.S.G. § 4B1.2(a).[2]

---

[1] A final clause of the statute included crimes that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court recently declared this catchall "residual clause" unconstitutionally vague. *Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551, 2557 (2015). The "residual clause" is no longer considered part of the ACCA's definition of "violent felony." *United States v. Dixon*, 805 F.3d 1193, 1195 n.2 (9th Cir. 2015). The invalidation of the residual clause has required courts to reassess whether convictions which previously qualified as ACCA predicates under that catch-all might otherwise qualify under one of the ACCA's other clauses. This has been a particular concern when one or more of the prior convictions is for Burglary I, ORS 164.225(1), as I recently discussed in my decision in *United States v. Mayer*, Case No. 6:05-cr-60072-AA, (D. Or. Feb. 5, 2016).

The terms "violent felony" in the ACCA, 18 U.S.C. § 924(e)(2)(B), and "crime of violence" in Guidelines § 4B1.2, are interpreted according to the same precedent. *Park*, 649 F.3d at 1177.

## BACKGROUND

The indictment in this case alleged that on January 13, 2014, Defendant knowingly and unlawfully possessed a handgun and that Defendant had at least three prior convictions for violent felonies.  Defendant was tried before a jury and, on May 15, 2015, Defendant was convicted of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g).

Defendant has three relevant prior convictions, all originating in the Jackson County Circuit Court: a 2001 conviction for Robbery III; a 2004 conviction for Assault III; and a 2013 conviction for Coercion.[3]

## DISCUSSION

The Government contends that each of Defendant's three convictions "has as an element the use, attempted use, or threatened use of physical force against the person of another," and that they therefore qualify as ACCA predicate convictions.  Defendant asserts that his prior convictions do not qualify as "violent felonies" under the ACCA and that he should not be subject to the ACCA's fifteen-year mandatory minimum sentence.

To determine whether a state conviction is a "violent felony" under the ACCA, courts must apply a "formal categorical approach." *Taylor v. United States*, 495 U.S. 575, 600 (1990). Under the categorical approach, courts "look only to the fact of conviction and the statutory

---

[2] The catch-all "residual clause" of U.S.S.G. § 4B1.2 was also invalidated by the Supreme Court's decision in *Johnson*. *See United States v. Benavides*, 617 F. App'x 790 (9th Cir. 2015).

[3] The indictment also alleged convictions for Felony Attempt to Elude in 2003, 2004, 2005, 2007, 2010, 2011, and 2012.  At the time of Defendant's conviction in this case, these prior convictions would have been considered violent felonies under the "residual clause." *See Sykes v. United States*, 564 U.S. 1 (2011).  The "residual clause" has now been declared unconstitutional, *Johnson*, 135 S.Ct. at 2557, and the Government no longer asserts that Defendant's convictions for Felony Attempt to Elude qualify as violent felonies under the ACCA.

definition of the prior offense." *Id.* at 602. "A violation of a state statute is categorically a 'violent felony' under the ACCA 'only if the [state] statute's elements are the same as, or narrower than' those included in the ACCA's definition of 'violent felony'" *United States v. Dixon*, 805 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Descamps v. United States*, \_\_\_U.S.\_\_\_, 133 S.Ct. 2276, 2281 (2013)).[4] To identify the elements of a state statute, courts must consider both the language of the statute itself, as well as judicial opinions interpreting it. *Id.* (citing *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013)).

If a statute is "overbroad," meaning that it criminalizes conduct that goes beyond the elements of a violent felony, the court must determine if the statute is "divisible." *Almanza-Arenas v. Lynch*, 809 F.3d 515, 521 (9th Cir. 2015)(en banc). A statute is divisible if it sets out one or more elements in the alternative and some formulations of elements match the generic offense, while other formulations do not. *Descamps*, 133 S.Ct. at 2281. If a statute is indivisible, the court's inquiry ends because conviction under a statute that is indivisible and overbroad cannot serve as a predicate offense. *Almanza-Arenas*, 809 F.3d at 521.

If a statute is "divisible," that is, it contains multiple, alternative elements of functionally separate crimes, and some of those formulations of elements constitute ACCA predicate offenses, while others do not, courts may apply a "modified categorical approach." *Descamps*, 133 S.Ct. at 2281. The modified categorical approach permits the court to consider a limited range of documents such as charging instruments or plea agreements to permit the court to determine whether the defendant was convicted of an ACCA predicate offense. *Dixon*, 805 F.3d at 1196.

---

[4] In *Descamps v. United States*, \_\_\_U.S.\_\_\_, 133 S.Ct. 2276, 2281 (2013), the Supreme Court used this categorical framework to assess whether state statute convictions for the felonies enumerated in 18 U.S.C. § 924(e)(2)(B)(ii)— burglary, arson, and extortion—matched the "generic" crime, or "the offense as commonly understood." Courts apply the same analytical framework in assessing whether a state statute conviction falls within the ACCA's definition of having "as an element the use, attempted use, or threatened use of physical force." *See, e.g., Dixon*, 805 F.3d at 1195-97.

Because none of Defendant's relevant convictions are enumerated in the ACCA, they must "have as an element the use, attempted use, or threatened use of physical force against the person of another" to qualify as predicate offenses. 18 U.S.C. § 924(e)(2)(B)(i). The inclusion of "physical force" as an element of the state statute is not, standing alone, sufficient to make conviction under that statute a predicate offense. Rather, the ACCA requires that the physical force be "violent force" or "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*"). Additionally, "to qualify as defining a violent felony, a state statute must require that the physical force be inflicted intentionally, as opposed to recklessly or negligently." *United States v. Lawrence*, 627 F.3d 1281, 1284 (9th Cir. 2010).

In applying the categorical approach, courts must presume that a defendant's conviction rests on "the least of the acts criminalized," although that analysis is not "an invitation to apply 'legal imagination' to the state offense." *Moncrieffe v. Holder*, ___U.S.___, 133 S.Ct. 1678, 1684-85 (2013) (citations omitted). "[T]here must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* at 1685 (internal quotation marks and citations omitted).

Defendant also asserts that his convictions for Assault III and Coercion do not qualify as "crimes of violence" under the Guidelines. Courts apply the same analysis to determine if a prior conviction qualifies as a "crime of violence" for the purposes of U.S.S.G. § 4B1.2. *See United States v. Crews*, 621 F.3d 849, 856 (9th Cir. 2010)("[T]he terms 'violent felony' in the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), and 'crime of violence' in Guidelines section 4B1.2, are interpreted according to the same precedent.")(*overruled on other grounds, Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551, 2557 (2015)(the residual clause of the ACCA is

unconstitutionally vague)); *Park*, 649 F.3d at 1177 ("[W]e frequently look to cases interpreting the term 'violent felony' to determine whether a particular offense constitutes a 'crime of violence' under section 4B1.2(a) of the Guidelines.").

## I.    Robbery III

Defendant asserts that his conviction for Robbery III does not qualify as an ACCA predicate offense because the level of physical force required for conviction can be "minimal" and does not, therefore, rise to the level of "violent force" required by the Supreme Court in *Johnson I*.

Under Oregon law, a person commits the crime of robbery in the third degree "if in the course of committing or attempting to commit theft or unauthorized use of a vehicle . . . the person uses or threatens the immediate use of physical force upon another person . . . ." ORS 164.395(1).[5]  The Oregon Supreme Court has established that "[i]t is the additional factor of actual or threatened violence" that separates robbery from theft. *State v. Hamilton*, 348 Or. 371, 378 (2010); *see also State v. White*, 346 Or. 275, 290 (2009) ("It is the concept of fear or threat of violence that separates robbery from mere theft.").  As noted, however, the simple fact that ORS 164.395(1) includes the use or threatened use of physical force as an element does not automatically elevate a conviction for Robbery III to the level of a violent felony under the ACCA.  Courts must look to state law to determine what level of "physical force" is required for

---

[5] In full, the statute provides that:
> (1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in ORS 164.135 the person uses or threatens the immediate use of physical force upon another person with the intent of:
> (a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or
> (b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle.
> (2) Robbery in the third degree is a Class C felony.
ORS 164.395.

conviction under the state statute and then determine whether that force rises to the level of "violent force." *Johnson I*, 559 U.S. 133, 138-43 (2010); *United States v. Flores-Cordero*, 723 F.3d 1085, 1087 (9th Cir. 2013).

The Ninth Circuit has provided a number of examples of statutes that require an insufficient degree of physical force to qualify as categorical violent felonies. In *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921-22 (9th Cir. 2014), the court determined that conviction for assaulting a federal officer in violation of 18 U.S.C. § 111(a) did not qualify as a "crime of violence" because the level of force required might be as little as jolting a prosecutor, grabbing a wildlife agent's jacket, or spitting in a mail carrier's face. *Id.* at 921-22 (*citing United States v. Fernandez*, 837 F.2d 1031, 1033 (11th Cir. 1988); *United States v. Sommerstedt*, 752 F.2d 1494, 1495 (9th Cir. 1985); *United States v. Hightower*, 512 F.2d 60, 61 (5th Cir. 1975); *United States v. Frizzi*, 491 F.2d 1231, 1231-32 (1st Cir. 1974)). Similarly, the Ninth Circuit has held that resisting arrest under Arizona law does not qualify as a violent felony because a conviction can be sustained based on a "minor scuffle" in which the defendant kicked at the officers who were attempting to place her in handcuffs. *Flores-Cordero*, 723 F.3d at 1087-88 (*citing State v. Lee*, 217 Ariz. 514, 515 (Ariz. Ct. App. 2008)).

Turning to the specific case of ORS 164.395(1), the level of force required to sustain a conviction does not rise to the level of "violent force" required by *Johnson I*. The leading case on this issue is *State v. Johnson*, 215 Or. App. 1 (2007) ("*Johnson II*"). In *Johnson II*, the defendant robbed an elderly woman of her purse and a vase of flowers. *Id.* at 3. The victim was walking up to her home carrying her purse and the vase in her left hand, while she carried her cane and food in her right hand. *Id.* As she climbed the stairs to her home, she "felt her arm slip" and believed that her purse was slipping. *Id.* When she turned to readjust the purse, she

discovered that it was gone and that the defendant was running away with both the purse and her vase of flowers. *Id.* Notably, the victim testified that she did not feel a tug or "much of anything." *Id.* The defendant was subsequently apprehended and convicted of Robbery III. *Id.* On appeal, the defendant challenged whether there was sufficient evidence of physical force to permit a reasonable jury to find him guilty of violating ORS 164.395(1). *Id.* The Oregon Court of Appeals upheld the defendant's conviction, holding that:

> The statute [ORS 164.395] requires that force must be used on the victim. However, the statute does not focus on the extent to which the victim may or may not have felt the force, but rather on the perpetrator's intent, while using force on the victim, that any resistance that the victim might offer be prevented or overcome.

*Id.* at 5.

*Johnson II* shows that a conviction under ORS 164.395(1) requires only minimal force. Indeed, the level of force required is so small that the victim testified that she only became aware of the robbery when she saw the defendant fleeing with her property. Certainly this level of force falls below what was involved in the "minor scuffle" discussed in *Flores-Cordero* or in the incidents described by the Ninth Circuit in *Dominguez-Maroyoqui*. Because *Johnson II* shows that one can realistically violate ORS 164.395(1) without the use of "violent force" or "force capable of causing physical pain or injury to another person," I conclude that a conviction for Robbery III under ORS 164.395(1) is overbroad for the purposes of the ACCA.

I further conclude that ORS 164.395(1) is not divisible. [6] As previously noted, in order to be divisible, "a state statute 'must contain multiple alternative elements of functionally separate crimes.'" *Dixon*, 805 F.3d at 1198 (*quoting Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014)). "A statute is not divisible merely because it is worded in the disjunctive." *Id.* Courts

---

[6] Despite my reservations, I apply the divisibility analysis as required by *Descamps* and *Almanza-Arenas*. *See United States v. Mayer*, Op. & Order at 15-20, Case No. 6:05-cr-60072-AA (D. Or. Feb. 5, 2016).

must determine whether the disjunctively worded portions of the statute supply alternative elements—which are necessary for the jury to find a defendant's guilt—or merely alternative means, which simply describe ways in which necessary elements of the statute might satisfied. *Id.*

In this case, the statute contains a number of disjunctive phrases, such as "committing or attempting to commit" or "the person uses or threatens the immediate use of physical force." ORS 164.395(1). The Ninth Circuit has held that courts may examine the underlying indictment to determine whether these disjunctive phrases constitute elements or means. *Almanza-Arenas*, 809 F.3d at 524-25. Examination of the indictment may prove useful if, as in *Almanza-Arenas*, the defendant is charged in the disjunctive, because only means, and not elements, may be so charged. *Id.* In this case, Defendant's indictment charges that he "did unlawfully and knowingly threaten the immediate use of physical force upon [the victim] by attempting to commit theft of property; to wit: property and/or money, with the intent of preventing resistance to the said defendant's taking of the said property . . . ." Gov't Ex. 1, at 9-10.

The Ninth Circuit recognized, however, that indictments are often far from perfect. A prosecutor may, for instance, improperly charge elements in the disjunctive or charge a particular means out of convenience, and defendants often plead guilty to such improperly charged indictments without alteration. *Almanza-Arenas*, 809 F.3d at 524 n.13. The divisibility inquiry may not, therefore, end after looking at the indictment. *Id.* Courts may also refer to the state's model jury instructions to determine whether a disjunctive phrase separates alternative elements of the crime or alternative means. *Dixon*, 805 F.3d at 1198. The Oregon Uniform Criminal Jury Instructions divides the crime of Robbery III as follows: (1) the defendant committed/attempted to commit theft/unauthorized use of a motor vehicle; (2) in the course of committing/attempting

to commit the theft/unauthorized use of a motor vehicle, the defendant used/threatened the immediate use of physical force on the victim; (3) with the intent of (a) preventing/overcoming resistance to the defendant's taking of the property/retention of the property; or (b) compelling the owner of the property/another person to deliver the property/aid in the commission of the theft. Or. Unif. Cr. Jury Instructions. § 2103 (2013).

In *Dixon*, the Ninth Circuit examined the California model jury instructions to determine whether the disjunctive phrases in the California robbery statute, CPC § 211, comprised alternative elements or alternative means. *Dixon*, 805 F.3d at 1198. In this case, as in *Dixon*, it is clear from the statute and the jury instructions that the disjunctively worded phrases within ORS 164.395(1) identify alternative means and not alternative elements. A jury must, for instance, agree that the third element of the offense is satisfied, but it need not reach an agreement as to whether a defendant sought to prevent resistance to the taking or to overcome that resistance. *See Johnson II*, 215 Or. App. at 6 (the jury could infer both that the defendant intended to use force to overcome resistance and to prevent resistance). Certainly none of the disjunctive phrases of ORS 164.395 would create "alternative elements of functionally separate crimes." [7]

---

[7] The third element of ORS 164.395(1), which provides that a defendant must have acted intentionally, might be said to provide alternative elements in terms of what, precisely, a defendant must have intended by his or her use of force in the course of the theft. As noted, however, a robbery in which the defendant intends to overcome the victim's resistance to the taking of property is not "functionally separate" from a robbery in which the defendant intentionally uses force to compel the victim to surrender property. Furthermore, as the Supreme Court explained in *Descamps*, the purpose of the inquiry into divisibility is to determine whether alternative elements provide a formula for conviction that could place the conviction outside of the bounds of the generic offense. *Descamps*, 133 S.Ct. at 2281. Even assuming, *in arguendo*, that ORS 164.395(1)(a) and (b) provide alternative elements and not simply alternative means, none of the alternative formulations would result in a conviction that deviates from the generic "violent felony." Rather, as discussed above, ORS 164.395(1) falls outside of the generic violent felony because the level of force required for conviction does not rise to the level of "violent force" as required by *Johnson I*.

Because ORS 164.395(1) is not divisible, application of the modified categorical approach would be inappropriate.[8] *Deschamps*, 133 S.Ct. at 2281-82. Because ORS 164.395 is overbroad and indivisible, I conclude that Defendant's conviction for Robbery III is not a predicate "violent felony" conviction for the purposes of the ACCA.

## II.    Assault III

Defendant's second conviction was for Assault III in violation of ORS 163.165(1)(e).[9] "A person commits the crime of assault in the third degree if the person: . . . While aided by another person actually present, intentionally or knowingly causes physical injury to another[.]" ORS 163.165(1)(e). Defendant contends that his conviction for Assault III cannot be considered a violent felony for the purposes of the ACCA or a "crime of violence" for the purposes of U.S.S.G. § 2K2.1 and § 4B1.2.

### a.    Causation

The Ninth Circuit not yet determined whether Assault III qualifies as a violent felony under the ACCA.[10] Defendant points out that, by its plain language, ORS 163.165(1)(e) does not have, as an element, "the use, attempted use, or threatened use of physical force" required by the ACCA. Rather, the statute requires the intentional or knowing *causation* of physical injury.

The Supreme Court has previously addressed whether a statute that prohibits the causation of injury necessarily has as an element the use or attempted use of physical force in the context of 18 U.S.C. § 922(g)(9). *United States v. Castleman*, ___U.S.___,134 S.Ct. 1405, 1414-

---

[8] Even if the statue were divisible, Defendant's indictment alleges that he threatened the use of force with the intent of preventing the victim's resistance to Defendant's taking of the victim's property. Gov't Ex. 1, at 9-10. Defendant's conviction was therefore under ORS 164.395(1)(a). In *Johnson II*, the Oregon Court of Appeals held that the defendant's minimal use of force was sufficient to satisfy ORS 164.395(1)(a). *State v. Johnson*, 215 Or. App. 1, 5 (2007). Defendant's conviction would still not constitute an ACCA predicate offense, even under a divisible ORS 164.395(1).

[9] The parties agree that ORS 163.165(1) is divisible.

[10] The Ninth Circuit has previously held that Assault II, ORS 163.175(1)(b), qualified as a crime of violence under the now-defunct residual clause. *United States v. Crews*, 621 F.3d 849 (9th Cir. 2010).

15 (2014).  § 922(g)(9) prohibits anyone convicted of a misdemeanor crime of domestic violence from possessing firearms.  18 U.S.C. § 922(g)(9).  The term "misdemeanor crime of domestic violence" means an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon . . . ."  18 U.S.C. § 921(a)(33)(A)(ii).  In *Castleman*, the defendant had been convicted under Tennessee's domestic violence statute, which prohibited assault against family or household members.  *Castleman*, 134 S.Ct. at 1413.  Tennessee law defined assault in three ways:

> '(1) [i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another; (2) [i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury; or (3) [i]ntentionally or knowingly caus[ing] physical contact with another' in a manner that a 'reasonable person would regard . . . as extremely offensive or provocative.'

*Id.* at 1413 (quoting Tenn. Code Ann. § 39-13-101(a)).  In assessing whether a statute that prohibits causing injury meets the requirement of having as an element, the use or attempted use of force, the Court held that "[i]t is impossible to cause bodily injury without applying force in the common-law sense," and that "the knowing or intentional application of force is a 'use' of force."  *Id.* at 1414-15.  I conclude, therefore, that ORS 163.165(1)(e), which, like the Tennessee statute in *Castleman*,  prohibits the knowing or intentional causation of physical injury, meets the requirement of "having as an element, the use, attempted use, or threatened use of physical force."

### b.  "Violent force"

Defendant contends that the level of force required for conviction under ORS 163.165(1)(e) falls below the level of "violent force" required by *Johnson I*.  In *Castleman*, Supreme Court expressly declined to reach the issue of whether the causation of bodily injury necessarily entailed the use of "violent force."  *Castleman*, 134 S.Ct. at 1413.

The statutory definition provides that "physical injury," as it is used in ORS 163.165(1)(e), means "impairment of physical condition or substantial pain." ORS 161.015(7). In support of his argument, Defendant points to *State ex rel. Juvenile Dep't of Multnomah Cty. v. Greenwood*, 107 Or. App. 678 (1991), in which the Oregon Court of Appeals found that a victim had experienced "substantial pain" when she "could feel [that she had] been struck" and suffered a "headache or pain" lasting an hour after the defendant struck her over the head with a closed umbrella. *Id.* at 680-82. Defendant argues that this level of physical force is comparable to the more minimal uses of force, which courts have already determined to fall below the threshold of "violent force," such as a "snowball [that] causes a yelp of pain, or a squeeze of the arm that causes a bruise." *Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003).

Defendant's argument is not persuasive. When the defendant in *State ex rel. Juvenile* struck the victim, she used a degree of force that clearly exceeded the minimal force contemplated in *Flores*. The fact that the victim felt pain from the blow for at least an hour indicates that the level of force also rises above the grabbing or jostling discussed in *Dominguez-Maroyoqui*, 748 F.3d at 921-22, or the "minor scuffle" described in *Flores-Cordero*, 723 F.3d at 1087-88. I conclude, therefore, that a conviction under ORS 163.165(1)(e) cannot be categorically excluded as a violent felony on the basis of the level of force required.

### c.  Culpable Mental State

Defendant next argues that, because ORS 163.165(1)(e) encompasses "knowing" conduct, it cannot be a predicate conviction under the ACCA. Specifically, Defendant contends that all Oregon law requires is that the defendant know of the "assaultive nature" of his conduct, but need not "know" that he is causing injury. In support of his argument, Defendant cites *State v. Barnes*, 329 Or. 327 (1999). In *Barnes*, the defendant struck a security guard in the eye,

fracturing the bone of the guard's eye socket. *Id.* at 329-30. The defendant was charged and convicted for a "knowing" Assault II in violation of ORS 163.175(1)(a), but challenged whether the statute's use of "knowing" applied to the defendant's conduct or the result of that conduct.[11] *Id.* at 333. The Oregon Supreme Court concluded that "the state needs to prove only that defendant was aware of the assaultive nature of his conduct and that his conduct in fact caused the victim serious physical injury." *Id.* at 338. Defendant contends that the phrase "assaultive nature of [the defendant's] conduct" is too amorphous to sustain a predicate conviction.

I am not persuaded by Defendant's reasoning. It might be, as Defendant suggests, that a conviction might result from a knowingly assaultive act that results in a reckless injury, but Defendant does not provide an example of the statute being applied in that way. Although courts must presume that a defendant's conviction rests on the least of the acts criminalized, that analysis is not "an invitation to apply 'legal imagination' to the state offense." *Moncrieffe*, 133 S.Ct. at 1684-85. "[T]here must be realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* at 1685.

Defendant also neglects the holding of *Castleman*. The central issue is whether a statute that prohibits "knowing" causation of injury can be a categorical match for a crime that has, as an element, the use, attempted use, or threatened use of physical force. In *Castleman*, as discussed above, the Supreme Court determined that such a statute did meet that requirement. *Castleman*, 134 S.Ct. 1414-15.

Ultimately, it is irrelevant whether a "knowing" assault is sufficient under the ACCA because Defendant was convicted of an intentional assault. Under Oregon law, intentional

---

[11] ORS 163.175(1)(a) provides that "[a] person commits the crime of assault in the second degree if the person: . . . intentionally or knowingly causes serious physical injury to another."

conduct applies to both the act and the result. *Barnes*, 329 Or. at 333 n. 4; ORS 161.085(7). The parties do not dispute that ORS 163.165(1) is divisible. Accordingly, the court may apply the modified categorical approach, which permits the sentencing court to examine certain documents related specifically to Defendant's conviction, such as indictments or plea agreements. *Descamps*, 133 S.Ct. at 2281. Defendant's indictment alleges that Defendant "did unlawfully and intentionally, while aided by another person actually present, cause physical injury" to the victim. Gov't Ex. 2, at 7. Defendant subsequently pleaded guilty to Assault III, acknowledging that the factual basis of his plea was "as alleged in the Indictment." *Id.* at 5. It is clear, therefore, that Defendant's conviction was for intentional conduct.

Accordingly, I conclude that Defendant's conviction for Assault III in violation of ORS 163.165(1)(e) is a "violent felony" for the purposes of the ACCA and a "crime of violence" for the purposes of the Guidelines.

### III.    Coercion

Defendant's third relevant conviction was for Coercion in violation of ORS 163.275(1)(a). [12] The statute provides that:

> A person commits the crime of coercion when the person compels or induces another person to engage in conduct from which the other person has a legal right to abstain, or to abstain from engaging in conduct in which the other person has a legal right to engage, by means of instilling in the other person a fear that, if the other person refrains from the conduct compelled or induced or engages in conduct contrary to the compulsion or inducement, the actor or another will . . . Unlawfully cause physical injury to some person.

ORS 163.275(1)(a). Oregon courts divide the statute into three elements: the accused must "(1) induce a victim to abstain from doing something; that (2) the victim has a right to do; by (3) making the victim afraid that if he or she does it, one of the enumerated

---

[12] The Ninth Circuit has previously considered ORS 163.275(1)(a) in the context of the now-defunct residual clause and held that a conviction for intentional or knowing Coercion was a violent felony. *United States v. Powell*, 441 F. App'x 502, 504-08 (9th Cir. 2011).

consequences will result." *State v. Pedersen*, 242 Or. App. 305, 311 (2011). When, as in this case, the statute does not provide a mens rea, Oregon law provides that culpable mental state is still required and "is established only if the person acts intentionally, knowingly, recklessly or with criminal negligence." ORS 161.115(2).

The Ninth Circuit has previously determined that ORS 163.275(1) is divisible.[13] *United States v. Powell*, 441 F. App'x 502, 505 (9th Cir. 2011) (*overruled on other grounds, Johnson*, 135 S.Ct. at 2557 (ACCA residual clause is unconstitutionally vague)). Accordingly, the court may examine Defendant's underlying indictment and plea petition to determine if Defendant was convicted of an intentional or knowing violation of ORS 163.275(1)(a). *Id.* In this case, the Indictment alleged that Defendant "did unlawfully and knowingly compel or induce [the victim] to engage in in conduct from which [the victim] had a legal right to abstain, by means of instilling in [the victim] a fear that if [the victim] refrained from the conduct compulsion [sic] defendant would unlawfully cause physical injury to [the victim]." Gov't Ex. 3, at 12. On October 23, 2013, Defendant pleaded guilty to Coercion and acknowledged that the factual basis for his plea was "as alleged in the Indictment." *Id.* at 9.

Defendant contends that Coercion cannot qualify as a violent felony or a crime of violence because it does not require an intentional threat of violent force. Once again, the example of *Castleman* is instructive. As previously noted, *Castleman* involved a statute which encompassed the knowing or intentional causation of physical injury. *Castleman*, 134 S.Ct. 1413-14. The Supreme Court held that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *Id.* at 1414. Under that analysis, it follows that intentionally or knowingly causing fear of physical injury

---

[13] The parties do not dispute that ORS 163.275(1) is divisible.

necessarily requires the threatened use of physical force. *Cf. United States v. Jennen*, 596 F.3d 594, 601-02 (9th Cir. 2010) (holding, in the context of Washington's Assault II statute, "that placing someone in apprehension of bodily harm with the specific intent of doing so while using a deadly weapon requires a 'threatened use of physical force.'").

Under Oregon law, Coercion requires that the defendant cause another to feel fear of physical injury and Defendant in this case was convicted for a knowing violation of ORS 163.275(1)(a).  I conclude, therefore, that Defendant was convicted of knowingly threatening the use of physical force.[14]

Defendant further argues that the statute does not expressly apply a culpable mental state to the requirement that the victim be made to fear injury.  Defendant contends that the statute might be applied in such a way that a person might knowingly or intentionally cause the victim to feel fear that he or she will suffer a reckless injury. Defendant does not, however, provide an example of ORS 163.275(1)(a) being applied in that manner.  As previously noted, the Supreme Court has forbidden courts to apply "legal imagination" to state offenses. *Moncrieffe*, 133 S.Ct. at 1684-85.  Furthermore, Oregon law provides that if an offense "prescribes a culpable mental state, but does not specify the elements to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state." ORS 161.115(1).  In the present case, the culpable mental state of "knowing" therefore applies to each of the elements of the offense.

---

[14] In the context of the residual clause, the Ninth Circuit has held that "knowing" conduct was sufficiently purposeful to qualify as intentional for the purposes of the ACCA. *Crews*, 621 F.3d at 856-57 ("We have trouble imaging a circumstance in which a person could knowingly use a dangerous weapon to assault another person without intending to do so.").

Accordingly, I conclude that Defendant's conviction for Coercion in violation of ORS 163.275(1)(a) qualifies as a "violent felony" under the ACCA and a "crime of violence" under the Guidelines.

## IV.    Punishable For a Term Exceeding One Year

The ACCA and the Guidelines require that a predicate felony conviction be for a "crime punishable for a term exceeding one year[.]" 18 U.S.C. § 924(e)(2)(B); *see also* U.S.S.G. § 4B1.2(a) ("The term 'crime of violence' means any offense under federal or state law punishable by imprisonment for a term exceeding one year[.]").  Defendant contends that his convictions for Robbery III and Assault III do not meet that threshold requirement.

Robbery III and Assault III are designated as "Class C" felonies.  ORS 164.395(2) (Robbery III); ORS 163.165(2)(a) (Assault III).  The maximum term of imprisonment for a Class C felony is five years.  ORS 161.605(3).  Defendant contends that the court cannot rely on the maximum statutory term of imprisonment in determining whether a conviction meets the threshold requirement, but must look instead to Oregon's sentencing grid and guidelines.

The Ninth Circuit has held that, for the purposes of determining predicate convictions, courts must use the "potential maximum sentence defined by the applicable state criminal statute, not the maximum sentence that could have been imposed against the particular defendant for his commission of the crime according to the state's sentencing guidelines." *United States v. Murillo*, 422 F.3d 1152, 1155 (9th Cir. 2005); *see also Crews*, 621 F.3d at 852 (Class B felony met the threshold requirement for a "crime of violence" because ORS 161.605(2) provides a ten-year maximum sentence).

Defendant contends that this precedent has been superseded by the Supreme Court's decisions in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010) and *Moncrieffe*, 133 S.Ct. 1678 (2013) and, as Defendant points out, other Circuits have held that sentencing courts must look to the state sentencing guidelines to determine whether a conviction meets the threshold sentencing requirement. *See, e.g.*, *United States v. Brooks*, 751 F.3d 1204, 1211 (10th Cir. 2014); *United States v. Haltiwanger*, 637 F.3d 881, 884 (8th Cir. 2011).

The Ninth Circuit has recently re-affirmed, however, that *Murillo* "has not been abrogated or overruled and remains binding law in this circuit." *United States v. Fletes-Ramos*, 612 F. App'x 484, 485 (9th Cir. 2015). Courts within the Ninth Circuit must therefore apply the holding of *Murillo* and look to the statutory maximum in determining whether a conviction is a qualifying "violent felony" or "crime of violence," rather than to the state sentencing guidelines.

Each of Defendant's prior convictions is for a Class C felony. Under ORS 161.605(3), a Class C felony is punishable by a maximum of five years imprisonment. Defendant's prior convictions are therefore for crimes punishably by imprisonment for a term exceeding one year.

## V.    Defendant's Remaining Objections

### a.  The Presentence Report

Defendant objects to the inclusion of certain information in his Presentence Report ("PSR") and asks that the information be stricken and, in places, replaced with language of Defendant's choosing.

The Federal Rules of Criminal Procedure provide that at the time of sentencing, the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencings." Fed. R. Crim. P. 32(i)(3)(B).

Defendant's objections principally deal with the inclusion of information that Defendant believes the Bureau of Prisons will consider when determining his eligibility for work assignments or programs. Only a handful of Defendant's objections actually address issues that would affect his sentence.

First, Defendant asks that the court strike paragraph 20 of the PSR, which states that Defendant will not receive a reduction to his base offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 because he denied the factual elements of his guilt. Defendant contends that he would have entered a guilty plea if the Government had been willing to forego seeking the ACCA mandatory minimum.[15] Defendant contends that, because of his hypothetical willingness to plead guilty under certain circumstances, he should receive the benefit of a three-level reduction to his base offense level to compensate for the loss of a comparable reduction he might have received for acceptance of responsibility. As Defendant concedes that he did proceed to trial and that he is not entitled to a reduction for acceptance of responsibility, I decline to strike paragraph 20.

Next, Defendant objects, in general terms, to the calculation of his base offense level as set forth in paragraphs 22-102. Defendant contends that the calculations are either "without a factual basis, cruel, unusual and disproportional to the status offense crime actually proved at

---

[15] As previously noted, Defendant had a substantial number of convictions for felony Attempt to Elude. Felony Attempt to Elude was considered a "violent felony" at the time of Defendant's trial and conviction in this case.

trial, based on the red herring of an accidental shooting and based on 'misdemeanor' felonies. . .
." Defendant's objections appear to be based on his preferred narrative versions of a number of his underlying convictions. As I have determined that Defendant does not have the required number of predicate convictions to qualify for the ACCA mandatory minimum, I will strike those portions of paragraphs 28, 66, and 86 which state that Defendant is to be sentenced under the ACCA. I decline to strike the other paragraphs to which Defendant has raised objections.

Finally, the PSR recommends a two-level increase in Defendant's base offense level pursuant to U.S.S.G. § 2K2.1(b)(4)(A) because the firearm that Defendant unlawfully possessed was stolen. Defendant objects to the two-level increase because the Government did not allege or prove at trial that Defendant knowingly possessed a stolen firearm. Defendant does not dispute that the firearm was in fact stolen. The Guidelines do not require that a defendant know that the unlawfully possessed firearm is stolen and the Ninth Circuit has held that this "strict liability" sentence enhancement is constitutional. *United States v. Goodell*, 990 F.2d 497, 498-501 (9th Cir. 1993); *see also United States v. Herring*, 143 F. App'x 18, 19 (9th Cir. 2005) ("Since Herring does not dispute that the gun was in fact stolen, the enhancement by its terms applies whether or not he knew that fact."). Accordingly, I decline to strike the two-level enhancement for unlawfully possessing a stolen firearm.

I will determine Defendant's base offense level at the time of sentencing.

### b. *Brady/Giglio*

Defendant renews his objection to an alleged *Brady/Giglio* violation that Defendant contends the Government committed during the trial.[16] During the trial, I denied Defendant's

---

[16] In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that prosecutors have a duty to divulge to the defense before trial "evidence favorable to [the] accused." In *Giglio v. United States*, 405 U.S. 150, 154-55 (1972), the Supreme Court held that prosecutors must disclose to the defense any "understanding or agreement as to a future prosecution" that the government has made with a material witness.

motion to dismiss this case based on the alleged *Brady/Giglio* violation. Defendant now requests that the court sanction the Government by refusing to impose the ACCA mandatory minimum sentence. As I have determined that Defendant does not have the requisite three predicate convictions to qualify for the ACCA mandatory minimum sentence, it is not necessary to address whether such a sanction would be permissible or, if it was permissible, whether it should be imposed. It is similarly unnecessary to address Defendant's assertion that the ACCA mandatory minimum sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment.[17]

## CONCLUSION

Defendant does not have the required three predicate convictions for "violent felonies" under the ACCA and shall not be subject to the mandatory minimum sentence provided by 18 U.S.C. § 924(e). Defendant's felony convictions for Assault III and Coercion shall be considered "crimes of violence" for the purpose of determining his base offense level under the Guidelines.

DATED this _____ day of February, 2016.

ANN AIKEN
District Judge

---

[17] The Ninth Circuit has expressly held that a fifteen-year sentence under the ACCA does not violate the Eighth Amendment. *United States v. Baker*, 850 F.2d 1365, 1372 (9th Cir. 1988).